# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY HESTER and<br>GINA HESTER,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY<br>COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 3:24-cv-00668<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Before the Court in this insurance dispute is State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment, (Doc. No. 19), which the Court may grant only if (1) State Farm has shown "that there is no genuine dispute as to any material fact," and (2) State Farm "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). State Farm's motion is fully briefed and ripe for decision (see Doc. Nos. 21, 24, 26). For the following reasons, the motion will be denied.

Most of the background facts in this case are undisputed.[1] Anthony and Gina Hester ("Hesters") own a home located at 205 Fantasia Way in Clarksville, Tennessee ("Home"). (Doc. No. 1-1 ¶ 1). On March 5, 2023, a "severe weather event which included high velocity wind" damaged the roof of the Home. (Id. ¶ 6). Fortunately for the Hesters, they purchased a homeowner's insurance policy from State Farm ("Policy") that covered wind damage to their

---

[1] The Court draws these facts from the undisputed portions of the parties' statements of facts (Doc. Nos. 20, 23, 25), the exhibits submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1-1) that are not contradicted by the evidence in the record.

Home.  (Doc. No. 21 at 8; <u>see also</u> Doc. No. 19-1 at 5).  Specifically, the Policy provides, among other things, that State Farm "will pay the cost to repair or replace with similar construction and for the same use on the premises" any "accidental direct physical loss to the property" caused by a "[w]indstorm."  (Doc. No. 19-1 at 19, 25 (emphases added)).  Pursuant to this Policy, the Hesters filed an insurance claim with State Farm to cover the costs associated with their roof damage.  (Doc. No. 20 ¶¶ 1–2).

State Farm hired Hancock Claims Consultants ("Hancock") to inspect the Hesters' Home and determine the extent of the wind damage.  (<u>See id.</u> ¶ 3).  Hancock submitted a report indicating that the windstorm damaged 67 roof shingles.  (Doc. No. 19-1 at 45–48).  In May 2023, State Farm reviewed an industry report (known as "ITEL") to determine whether there were any shingles available that matched the undamaged shingles on the Hesters' roof.  (<u>See</u> Doc. No. 20 ¶ 6).  State Farm notified the Hesters that "3-tab" "GAF Timberline HDZ" shingles "in Barkwood Color" were available and constituted "an acceptable match" to the existing undamaged shingles.  (<u>See</u> <u>id.</u> ¶ 7; Doc. No. 19-1 at 80).  As a result, State Farm told the Hesters that it would only cover the cost to *repair* the damaged shingles with these "matching" shingles, rather than pay to *replace* the entire roof.  (Doc. No. 20 ¶ 4).  State Farm estimated that the cost to repair the roof with these replacement shingles was $9,356.85,[2] which reflected State Farm's valuation of the Hesters' total covered losses.  (<u>Id.</u> ¶¶ 8–9; <u>see also</u> Doc. No. 19-1 at 65).  The Hesters hired their own consultant from Southern Roofing & Renovations to assess the damage to their roof.  (<u>See</u> Doc. No. 23-2).  Southern Roofing disagreed that there were matching shingles, and it recommended "a total roof

---

[2] State Farm initially estimated that it would cost $7,186.12 to repair the roof with the matching "3-tab" shingles, but it later increased that estimate by $2,170.73 when it learned the shingles "were architectural and not 3 tab."  (Doc. No. 20 ¶¶ 8–9).  It then subtracted $1,000 from this amount based on the Hesters' deductible.  (<u>Id.</u> ¶ 8).

replacement" because "the value of the repairs" was "$46,099.49."[3]  (Id.; see also Doc. No. 23-1 ¶ 5).

On April 15, 2024, the Hesters sued State Farm in state court for breach of contract, alleging that State Farm violated the Policy by refusing to cover the full amount of damages to their roof. (Doc. No. 1-1 ¶¶ 10–17).  They sought both compensatory and punitive damages for this alleged breach.  (Id. ¶¶ 18–26).  State Farm removed the case based on diversity jurisdiction, (Doc. No. 1), and the case stayed relatively silent until State Farm moved for summary judgment in May 2025.  In support of its motion, State Farm argues that it "complied with the terms" of the Policy by offering to cover the costs to repair the wind damage to the Hesters' roof with matching shingles.  (Doc. No. 19).

A breach of contract claim involves three elements: (1) "the existence of a valid and enforceable contract," (2) "a deficiency in the performance amounting to a breach," and (3) "damages caused by the breach."  Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011).  It is undisputed that the Policy is a "valid and enforceable contract" between the Hesters and State Farm.  (Doc. No. 21 at 8).  Thus, the issue on summary judgment is whether State Farm breached the Policy.

As an initial matter, the Hesters suggest that the Policy required State Farm to *replace*, rather than just *repair*, their roof as a matter of law.  The Court disagrees.  An insurance policy is just like any other contract, and the terms of the policy should be given their plain and ordinary

---

[3] The Hesters also requested an independent appraisal of the damage pursuant to the Policy, but State Farm refused because it claimed an "[a]ppraisal cannot be used to resolve disputes regarding coverage provided by the contract."  (Doc. No. 19-1 at 83–85).  There is also a dispute of fact regarding whether the Hesters provided the requisite documentation to invoke an appraisal under the Policy.  (Doc. No. 21 at 3–4).

meaning.[4]  Garrison v. Bickford, 377 S.W.3d 659, 663 (Tenn. 2012).  The Policy states that State Farm "will pay the cost to repair **or** replace [the roof] with similar construction and for the same use on the premises."  (Doc. No. 19-1 at 25 (emphasis added)).  This disjunctive language is not ambiguous.  Accordingly, State Farm cannot be held liable for breaching the Policy *as a matter of law* merely because it chose to repair, rather than replace, the roof.

The Court's inquiry does not end there, however, because there is still a genuine factual dispute regarding whether covered damage to the roof could, in fact, be repaired with GAF Timberline HDZ shingles under the terms of the Policy.  State Farm argues that the Policy requires "a full roof replacement . . . only when repairs cannot be reasonably completed with matching materials," and it presented evidence from Hancock demonstrating that the roof could be repaired adequately with GAF Timberline HDZ shingles.  (Doc. No. 21 at 8–11).   The Hesters submitted contrary evidence from Southern Roofing showing that GAF Timberline HDZ "shingles would not match the existing color, texture and granulation" of their roof, meaning the only way to fix the damage would be a "total replacement of the roofing system."  (Doc. No. 23 ¶ 8; Doc. No. 23-2).  Put simply, State Farm presented evidence showing that the Hesters' covered losses were suffered $9,356.85, and the Hesters presented evidence showing that their covered losses were $46,099.49.  Viewing this evidence in the light most favorable to the Hesters, a reasonable factfinder could find that State Farm breached the Policy by not paying the full $46,099.49.  This factual dispute makes summary judgment inappropriate, and it will be up to the jury to resolve this dispute based on the evidence presented at trial.  (See Doc. No. 19-1 at 85 (recognizing the parties' disagreement about whether there were "matching" shingles that could repair the roof)).

---

[4] It appears that the Policy was made in Tennessee because the word "Tennessee" appears on the front cover, (see Doc. No. 19-1 at 5), and both parties cite Tennessee law in their respective briefs. Therefore, the Court will infer that the parties intended for Tennessee law to apply here.

Last, the Hesters claim they are entitled to punitive damages from State Farm because it refused to replace their roof. (Doc. No. 1-1 ¶¶ 22–26). "Punitive damages may be awarded in egregious cases involving breach of contract where, in addition to showing that the defendant breached a contract, the plaintiff provides clear and convincing proof that the defendant has acted either intentionally, fraudulently, maliciously, or recklessly." Lindenberg v. Jackson Nat'l Life Ins. Co., 912 F.3d 348, 362 (6th Cir. 2018) (quoting Rogers v. Louisville Land Co., 367 S.W.3d 196, 211 n.14 (Tenn. 2012)) (internal quotation marks omitted). Viewing the evidence in the light most favorable to the Hesters, a jury could find that State Farm may have acted *recklessly* in refusing to replace the Hesters' roof if there were no shingles that actually "matched." See Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992) (defining "recklessly"). Although the Court will not dismiss the claim for punitive damages at this time, it will revisit this issue at the close of proof at trial to determine whether the jury should be instructed about punitive damages.

For these reasons, State Farm's Motion for Summary Judgment (Doc. No. 19) is **DENIED**. This case remains set for a jury trial on October 21, 2025, and all remaining pretrial deadlines remain in place. The Court further orders that all parties **SHALL** engage in another formal attempt to resolve the case. On or before **September 12, 2025**, the parties shall confer and file a joint notice setting forth: (1) their agreed mediator; and (2) the date or dates of the mediation, which shall take place before October 3, 2025. If the parties cannot agree on a mediator within the time limit allotted, the Court will select a mediator for them. If the parties' mediation ultimately proves unsuccessful, the parties shall immediately file a joint status update to that effect.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE